MICHAEL E. KIRBY, Judge,
Ad Hoc.

\,STATEMENT OF THE FACTS & PROCEDURAL HISTORY

Plaintiff, Billie Carol Bolton discovered she had Hepatitis C in late 1999. She contends she contracted the disease from a blood transfusion performed at Woman’s Hospital Foundation of Baton Rouge in 1980.
On June 16,1999, a class action was filed in Civil District Court in Orleans Parish (“CDC”) entitled Hilda N. Garrison, et al. v. Blood Center for Southeast Louisiana, et al., No. 99-9855. That suit was on behalf of all Louisiana residents who re *1111 ceived blood transfusions from Louisiana hospitals before July 15, 1982 and contracted Hepatitis C. At some point Ms. Bolton became a plaintiff class representative in that class action lawsuit. Similarly, a number of corporations that own hospitals in this state were added as defendant class representatives, including Woman’s Hospital.
However, a CDC Judgment of July 24, 2000, dismissed Ms. Bolton’s claim because she had not submitted her claim to a medical review panel.
On February 26, 2003, Ms. Bolton requested a medical review panel for her claim against Woman’s Hospital. On June 9, 2003, Woman’s Hospital filed a petition against Ms. Bolton in East Baton Rouge Parish and requested that a suit number be assigned to the medical review panel action to conduct discovery and motion practice.
On March 23, 2004 the CDC dismissed the Hospital because Ms. Bolton was the only named class representative who had asserted a claim against Woman’s Hospital.
Ms. Bolton’s suit in Baton Rouge against Woman’s Hospital was dismissed on a Peremptory Exception of Prescription filed by the Hospital. | sThe Hospital asserted that Ms. Bolton’s claim had prescribed because her diagnosis was in 1999 and she did not file suit until 2003. The Hospital averred that within one year after discovering she had Hepatitis C Ms. Bolton needed to take some action to interrupt prescription, and that her suit in 2003 was too late. See La. R.S.9:5628.[1] The issue we must resolve is whether the above mentioned class action suit interrupted prescription on Ms. Bolton’s claim.

DISCUSSION:

Originally, the Louisiana’s Medical Malpractice Act did not limit liability for blood transfusions, because an action for transfusion of tainted blood fell under the Civil Code or the Louisiana Product’s Liability Act. The Act was amended in 1987 to include claims arising from blood transfusions. See La. R.S. 40:1299.41.
Under La. Civil Code art. 3462, the prescriptive period on a legal claim is interrupted [2] by the filing of a suit in a court of competent jurisdiction. However, La. R.S. 40:1299.47(A)(2)(a), provides that prescription on a covered malpractice claim is suspended[3] upon the filing of |4a request for a medical review panel. In LeBreton *1112 v. Rabilo, 97-2221 (La.7/8/98), 714 So.2d 1226, the Louisiana Supreme Court held that a plaintiff cannot benefit from both an interruption of prescription, by prematurely filing a suit C.C. art. 3462, and the suspension of prescription provided for in La. R.S. 40:1299.47(A)(2)(a), by later filing a request for a medical review panel.
Nevertheless, plaintiff raises a novel issue. She contends that La. C.C.P. art. 596, dealing with the suspension of prescription upon the filing of a class action lawsuit, can be harmonized with the Louisiana Medical Malpractice Act. La. C.C.P. art. 596, states:
Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein. Prescription which has been suspended as provided herein, begins to run again:
(1) As to any person electing to be excluded from the class, from the submission of that person’s election form;
(2) As to any person excluded from the class pursuant to Article 592, thirty days after mailing or other delivery or publication of a notice to such person that the class has been restricted or otherwise redefined so as to exclude him; or
(3) As to all members, thirty days after mailing or other delivery or publication of a notice to the class that the action has been dismissed, that the demand for class relief has been stricken pursuant to Article 592, or that the court has denied a motion to certify the class or has vacated a previous order certifying the class.
She reasons that although her petition as a class representative was dismissed, she remains a member of the putative class and prescription is |Rstill suspended as to her claim. Reference to the July 24, 2001 judgment of the CDC reveals that it dismisses “all plaintiffs’ claims for damages herein, including claims for the administration, [or] transfusion ... of blood or a blood product on or after September 1,1975....”
We are constrained to agree with the Hospital’s argument that Ms. Bolton was dismissed from the class action as a class representative and as a member of the class. Thus pursuant to C.C.P. art. 596(3) prescription began to run again on her claim thirty days after notice of the dismissal. We are impelled to this result because LeBreton, supra teaches that the general rule of C.C.P. art. 596 must yield to the specific rule for malpractice cases.
Next, plaintiff argues that to require her to submit her claim to a medical review panel is to require her to do a vain and useless act. She bases this argument on the fact that La. R.S. 40:1299.47(G) provides that the sole function of the medical review panel is to determine whether the defendant acted within the appropriate standard of care. However, plaintiff does not allege defendant breached any standard of care so the medical review panel has nothing to do. This argument, however, ignores the fundamental change that has taken place in this area of the law. In 1981 the legislature enacted C.C. art. 2322.1 which provided that certain uses of human blood by health care providers were exempt from strict liability or all liability without negligence. In 1990 the article was re-written to declare that specific uses of blood by named health care providers was the rendition of a medical service “for all purposes whatsoever,” and not a sale. Simply stated, plaintiff seeks *1113 to plead a products liability cause of action in this blood transfusion case. The legislature has abrogated that cause of action | (¡but provided another avenue of redress. It is plaintiffs obligation, though, to timely bring herself within the parameters of that remedy.
In 1999 these provisions were declared to be procedural and applicable to all causes of action regardless of when they may have arisen. Likewise in 1999 the legislature enacted La. R.S. 9:5628.1 relative to the time within which to file action for liability from the use of blood. Subsection (B) thereof provided that it was procedural and had retroactive application. However, for any claim that arose prior to July 1, 1997, the claimant was given until July 1, 2000 to file an action in a court of competent jurisdiction.
Ms. Bolton was treated at Woman’s in April of 1980. She learned she had Hepatitis C in October or November 1999 and since she did not use drugs or have tattoos she inferred the only cause was the asserted blood transfusion. She did not file her complaint with the Patients’ Compensation Fund until February 27, 2003, more than twenty-three (23) years from the date of treatment and more than three (3) years from the date of her diagnosis and discovery.
The claims against Woman’s are prescribed on the face of the petition under Louisiana Civil Code article 3492, La. R.S. 9:5628 and La. R.S. 9:5628.1. When prescription is evident on the face of the pleadings, the burden of proof shifts to the claimant to show that the action is not prescribed. See Eastin v. Entergy Corp., 2003-1030, (La.2/6/04), 865 So.2d 49, 54, and Kirby v. Field, 2004-1898 (La.App. 1 Cir. 9/23/05), 923 So.2d 131, writ denied, 2005-2467 (La.3/24/06), 925 So.2d 1230. Ms. Bolton has offered no evidence or credible argument to meet this burden.
| .CONCLUSION
Because we find La. R.S. 9:5628.1 to be applicable and a sufficiently clear statement of the legislative intent, we apply it here and affirm the trial court’s dismissal on the exception of prescription.
AFFIRMED.

.La. R.S. 9:5628. Actions for medical malpractice
A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
* * *

. Art. 3466. Effect of interruption
If prescription is interrupted, the time that has run is not counted. Prescription commences to run anew from the last day of interruption.

. Art. 3472. Effect of suspension
The period of suspension is not counted toward accrual of prescription. Prescription commences to run again upon the termination of the period of suspension.