JOHNSON, Justice.[1]
l iWe granted this writ application to determine whether the Plaintiffs’ lawsuit, seeking damages from the Louisiana Citizens Property Insurance Corporation, that *724 was filed nearly three years after Hurricane Katrina, is prescribed. The Fourth Circuit Court of Appeal held that the prescriptive period was interrupted by a timely filed class action petition against the insurer, which included the Plaintiffs as putative class members. Taranto v. Louisiana Citizens Property Ins. Corp., 09-0418 (La. App. 4 Cir. 12/16/09), 28 So.3d 543. For the reasons that follow, we hold that despite the language of the LCPIC insurance policy, which mandated a one year suit limitation, the Plaintiffs’ lawsuit was timely filed because prescription was suspended upon thehtimely filing of the pending class action suits, which included the Plaintiffs as putative class members.

FACTS AND PROCEDURAL HISTORY

On August 29, 2005, Hurricane Katrina completely devastated parts of New Orleans, Louisiana and the surrounding areas, and for the purpose of this case, the home of Sherry Coleman Taranto, Dean Coleman, and William S. Coleman, Sr. (hereinafter referred to as “Plaintiffs”), located at 25259 Chef Menteur Highway. In response to the extraordinary circumstances associated with Hurricanes Katrina and Rita, the Louisiana Legislature enacted House Bill 1289 and House Bill 1302, known as Acts 2006, Nos. 739[2] and 802, which extended the prescriptive period within which insureds were allowed an additional year to file certain claims under their insurance policies for losses incurred by the storms.[3] In May of 2006, the Louisiana | ^Citizens Property Insurance Corporation (“LCPIC”) unilaterally extended the period in which its insureds could file lawsuits concerning their Hurricane Katrina *725 damage to September 4, 2007. On June 27, 2008, the Plaintiffs filed a petition against their insurer, LCPIC, seeking payment of their policy limits and damages, including damages for emotional distress and mental anguish. The Plaintiffs alleged, in pertinent part, that (1) the Plaintiffs’ property and home were covered by a policy of insurance issued by LCPIC; (2) the property was completely destroyed on August 29, 2005, as a result of Hurricane Katrina; (8) the Plaintiffs presented proof of loss and made demand for payment of the policy limits; and (4) LCPIC refused to pay the policy limits. In the Petition for Damages, the Plaintiffs argued that the LCPIC’s internal operating manual, called “Louisiana Citizens Claims Program and Procedure Guide,” from April 2005, included a ten (10) year time limitation to commence actions for first party losses.
In response, LCPIC filed an Exception of Prescription, arguing that the suit was not filed within one year of loss and that the extended period of prescription provided by legislation had also expired. The trial court granted the Defendant’s Exception of Prescription and dismissed the Plaintiffs’ claims with prejudice, finding that the Plaintiffs failed to timely file their suit despite the legislative enactment that extended the time to file. The trial court found that the Plaintiffs could not rely on LCPIC’s operating manual because it contained a “typographical error indicating ten years to file litigation.” The trial court held that the Plaintiffs could not have had a “meeting of the minds” regarding a ten-year suit limitation period when the Plaintiffs undisputably were not aware of the internal manual until they received it in discovery. ^Specifically, the trial court ruled that
the operating manual ... was an in-house document that contained a typo ... indicating ten years to file litigation. This Court finds that the Plaintiffs’ insurance policy set forth a one-year prescriptive period for the filing of claims. In addition, the legislative enactment allowed additional time for parties to file suit related to Hurricane Katrina damage. As such, Plaintiff cannot rely on an internal document produced during discovery to expand the prescriptive period.
The court of appeal reversed the trial court’s ruling, holding that the prescriptive period was interrupted by the timely filing of a class action against LCPIC in which the Plaintiffs were putative class members. In Pitts v. Louisiana Citizens Property Ins. Corp., 08-1024 (La.App. 4 Cir. 1/7/09), 4 So.3d 107, unit denied, 09-286 (La.4/3/09), 6 So.3d 772, the Fourth Circuit held that under LSA-C.C.P. art. 596, the filing of class action suits against LCPIC, i.e., Buxton v. LCPIC, 06-8341, Civil District Court, Orleans Parish and Chalona v. LCPIC, 08-0257 (La.App. 4 Cir. 6/11/08), 3 So.3d 494, suspended or interrupted the running of prescription against Ms. Pitts’ property damage claims since Ms. Pitts was found to be a putative class member when the original class action petitions were filed. In summary, that court determined that prescription was interrupted on August 25, 2006, as to all putative class members, including Ms. Pitts, who had not opted-out of the class.
LCPIC filed a writ of certiorari, and this Court granted the writ application. Taranto v. Louisiana Citizens Property Ins. Corp., 10-105 (La.4/16/10), 31 So.3d 1068.

DISCUSSION

The issue before this Court is whether the Plaintiffs’ lawsuit had prescribed when it was filed after the expiration of the suit limitation period provided in the policy of insurance and after the expiration of the extended deadline enacted by the Louisi *726 ana Legislature despite other pending class actions against LCPIC involving Hurricane Katrina claims, which purportedly included Plaintiffs as putative class lsmembers.
In reviewing a peremptory exception of prescription, the standard of review requires an appellate court to determine whether the trial court’s finding of fact was manifestly erroneous. Carter v. Haygood, 04-0646, p. 9 (La.1/19/05), 892 So.2d 1261, 1267. Jurisprudence provides that statutes involving prescription are strictly construed against prescription and in favor of the obligation sought to be extinguished. Bailey v. Khoury, 04-0620 (La.1/20/05), 891 So.2d 1268, 1275. On the issue of prescription, the mover bears the burden of proving prescription. Pitts, supra. However, if the petition is prescribed on its face, then the burden of proof shifts to the Plaintiff to negate the presumption by establishing a suspension or interruption. Bailey, 891 So.2d at 1275.
There are two procedural devices used in Louisiana to bar valid substantive claims which have not been timely filed, namely prescription and peremption. Dozier v. Ingram Barge Co., 96-1370 (La. App. 4 Cir. 1/28/98), 706 So.2d 1064, 1066. According to our civilian tradition, prescription is defined as a means of acquiring real rights or of losing certain rights as the result of the passage of time. Marjorie Nieset Neufeld, Prescription and Peremption — The 1982 Revision of the Louisiana Civil Code, 58 Tul. L.Rev. 593 (November 1983) (citing to Baudry-Lacantinerie & Tissier as well as Aubry & Rau).[4] The article suggests, in pertinent part:
Traditionally, prescription has been divided into two categories: acquisitive prescription ... and liberative prescription, which is a mode of resisting a claim by virtue of the claimant’s inaction over an established period of time. Accordingly, the Louisiana Civil Code of 1870 provided that “prescription is a manner of acquiring the ownership of property, or discharging debts, by the effect of time, and under the | ^conditions regulated by law.”
Id. at 594-595.
In Cichirillo v. Avondale Industries, Inc., 04-C-2894, 04-C-2918 (La.11/29/05), 917 So.2d 424, this Court determined that the fundamental purpose of the prescription statutes is “to afford a defendant economic and psychological security if no claim is made timely and to protect the defendant from stale claims and from the loss or non-preservation of relevant proof.” According to the Louisiana Civil Code, there are only three forms of prescription: acquisitive, liberative, and prescription of nonuse. See LSA-C.C. art. 3445. This Court defines the term “libera-tive prescription” as a “period of time fixed by law for the exercise of a right.” State ex. rel. Div. of Admin. v. McInnis Bros. Constr., 97-0742 (La.10/21/97), 701 So.2d 937, 939. The Civil Code states that “there is no prescription other than that established by legislation” and “prescription runs against all persons” unless an exception is established by legislation. LSA-C.C. arts. 3457, 3467.
Louisiana jurisprudence recognizes three theories upon which a Plaintiff may rely to establish that prescription has not run: suspension, interruption, and renunciation.[5] Marco Demma v. Automobile *727 Club Inter-Insurance Exchange, 08-2810 (La.6/26/09), 15 So.3d 95, 98. Although sometimes used interchangeably, the concepts of “interruption” and “suspension” are distinguishable. The Louisiana Civil Code article 3462 provides in pertinent part “[prescription is interrupted when the owner commences action against the possessor, or when the obligee commences action against the obligor, in a court of competent jurisdiction and venue.”[6] If 17prescription is interrupted, the time that has run is not counted, and prescription commences to run anew from the last day of interruption. LSA-C.C.art. 3466. Adams v. Stalder, 2006-0051 (La.App. 1 Cir. 3/17/06), 934 So.2d 722, 725. By contrast, if prescription is suspended, the period of suspension is not counted toward the accrual of prescription but the time that has previously run is counted. LSA-C.C. art. 3472. This Court has indicated:
An interruption of prescription resulting from the filing of suit continues as long as the suit is pending. LSA-C.C. art. 3463. The effect of interruption of prescription, as contrasted with suspension of prescription, is that the time that has run prior to the interruption is not counted; prescription commences to run anew from the last day of the interruption. LSA-C.C. art. 3466.
Cichirillo, 917 So.2d at 430.
Generally, the statutes (or the policy of insurance) provide a time period within which a particular cause of action must be filed, or be forever barred. See Lee R. Russ and Thomas F. Segalla, 16 Couch on Insurance 3d, § 234:1 (2005), p. 234-7. In an insurance lawsuit, the time period that a Plaintiff has to bring this action may be derived from either the general statutes of limitations or the terms of the particular insurance policy. Id. at 234-9. The purpose of the limitations of action is to “insure that claims are asserted within a reasonable time, .... [and] to insure that notice of claims are given to adverse parties in order to prevent fraudulent and stale claims from springing up at great distances of time and surprising the other party.” Id. at 234-12.
Typically, prescription begins to run from the date of the loss. LSA-C.C. art. 3454. In this case, the Plaintiffs asserted that the insurance policy is a contract under |8LSA-C.C. art. 1906,[7] and that actions on contracts are regulated by the ten year prescription period provided by LSA-C.C. art. 3499. The Plaintiffs first argue that this claim may be brought within the ten year prescriptive period.
The Plaintiffs’ policy of insurance includes the following provision:'
CONDITIONS
[[Image here]]
11. Suit Against Us. No action can be brought unless the policy provisions have been complied with and *728 the action is started within one year after the date of loss.
Despite the general language which allows for ten (10) years to bring suit for breach of contract, the plain language of this policy indicates that the action expired one year after the date of loss.
Our courts have held in a claim for breach of contract, the insurance contract is limited by the clear and unambiguous terms of the policy. Louisiana Joint Underwriters of Audubon Ins. Co. v. Johnson, 2009-0336 (La.App. 4 Cir. 9/2/09), 20 So.3d 528, 531. In that case, the contract stated: “No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.” Louisiana Civil Code Article 2047 provides that “[t]he words of a contract must be given their generally prevailing meaning.” Insurers, like other individuals, are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume. Louisiana Ins. Guar. Ass’n v. Interstate Fire & Cas. Co., 630 So.2d 759, 763 (La.1994). In the absence of a statutory prohibition, a clause in an insurance policy fixing a reasonable time to institute suit is valid. See LSA-R.S. 22:629(B). According to Couch on Insurance 3d, § 235.1, “a contractual provision fixing limitation periods which differ from the time fixed by general statutes of limitations is binding on the | ^contracting parties and relieve the parties from both the general limitation statutes and their exceptions unless they are precluded by statute or public policy, or are unreasonable or unreasonably short.” The contractual period in an insurance policy will “govern an action unless the contractual period of limitations is invalid as contrary to statute, invalid as unreasonable....” Id. at 235-9.
In the present case, LCPIC argued that Louisiana Civil Code of Procedure Article 596 does not apply to the “contractual limitations” period at issue in this matter because it only applies to “libera-tive prescription.” In support, LCPIC relied on Katz v. Allstate Insurance Co., 04-1133 (La.App. 4 Cir. 2/2/05), 917 So.2d 443, which held that the filing of a class action does not alter a valid contractual prescriptive period. Because a contractual limitation period is not fixed by law or established by legislation, Article 596 is inapplicable. Katz, 917 So.2d at 447. According to Lila, Inc. v. Underwriters At Lloyd’s, London, 08-0681 (La.App. 4 Cir. 9/10/08), 994 So.2d 139, 147, the limitation cited in the insured’s insurance policy is not subject to interruption or suspension, but rather is merely a contractual agreement not to toll prescription if the insured institutes legal action within the two year time frame.
LCPIC also argued that the passage of La. Acts 2006, No. 802 (“Act 802”) did not change the contractual nature of the suit limitation provision in the Plaintiffs’ policy. This is clearly set forth in Act 802, which states that “any suit not instituted within [the specified] time and any claims relating thereto shall be forever barred unless a contract or the parties thereto provide for a later time.” LCPIC reasoned that if “Act 802 somehow converted the contractual limitation period into a new legislatively-established deadline, this deadline would be peremptive and not subject to suspension under the Civil Code.” LCPIC proposed that if there is a conflict between Act 802 and LSA-C.C.P. art. 596, it must be resolved in favor of applying | inAct 802 as the statute is specifically directed to the matter at issue.
LCPIC, and several amici who filed briefs in support of their position, argue that there are strong policy reasons sup *729 porting the enforcement of the contractual suit limitation, expressly authorized by the Louisiana Insurance Code. See LSA-R.S. 22:868(B), formerly LSA-R.S. 22:629(A)(3) (2005). The public interest is served by permitting the insurer to limit the time of its exposure. LCPIC submitted that because the insurer’s reserves must be sufficient to meet possible losses, a shorter period of exposure results in lower premium costs to the insured. LCPIC asserted that the stability of the insurance market depends upon this Court’s adherence to jurisprudence mandating the application of unambiguous contractual provisions.
Jurisprudence suggests that prescription may be suspended by the filing of a class action suit. Eastin v. Entergy Corp., 07-212, p. 12 (La.App. 5 Cir. 10/16/07), 971 So.2d 374, 381. In American Pipe & Const. Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the United States Supreme Court held that the filing of a class action suit “suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.” The Louisiana legislature codified the holding in Utah through LSA-C.C.P. 596, which provides:
Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein. Prescription which has been suspended as provided herein, begins to run again:
(1) As to any person electing to be excluded from the class, thirty days from the submission of that person’s election form;
(2) As to any person excluded from the class pursuant to Article 592, thirty days after mailing or other delivery or publication of a notice to such person that the class has been restricted or otherwise redefined so as to exclude him; or
(3)As to all members, thirty days after mailing or other delivery or | ^publication of a notice to the class that the action has been dismissed, that the demand for class relief has been stricken pursuant to Article 592, or that the court has denied a motion to certify the class or has vacated a previous order certifying the class.
LSA-C.C.P. art. 596. (Emphasis added).
Article 596 is “a special provision that prevents prescription from accruing against the claims of members of a putative class action until the propriety of the class action or the member’s participation in the action is determinated.” Galjour v. Bank One Equity Investors-Bidco, Inc., 05-1360, p. 4 (La.App. 4 Cir. 6/21/06), 935 So.2d 716, 721, quoting 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 4:12 (2008) (“Maraist & Lemmon”).
Additionally, this Court has held that “since the class action is brought on behalf of all members of the class, its filing interrupts prescription as to the claims of all members of the class, whether they are noticed before or after the prescriptive delay has terminated.” Williams v. State, 350 So.2d 131, 137 (La.1977). This Court noted that
A Louisiana court is thus authorized to provide for such reasonable notice ... to identifiable members of a class sought to be represented in a class action as will entitle them to avail themselves of or to disclaim representation of their interests by the class action. This power should be exercised by a court in which a class action is properly filed, in order to effectuate both 1) the legislative intention that Louisiana courts hear and determine true class actions, with binding *730 judgment conclusively determining by a single action numerous claims, and also 2) the constitutional due process requirement that all members of the class so bound receive such notice as is appropriate under the circumstances of the pendency of the litigation, including an opportunity to opt out of the class asserted.
Id. at 138.
Jurisprudence has provided that the interruption or suspension of the statute of limitations ceases as soon as the district court denies class certification. Bordelon v. City of Alexandria, 02-48 (La.App. 3 Cir. 7/10/02), 822 So.2d 223, 227-228. At that point, class members have the choice to file an independent suit against the | ^defendants. Id. at 228.
In Katz, supra, the Fourth Circuit court of appeal considered whether prescription on an insured’s claim was suspended due to a class action lawsuit arising out of a hail storm. Allstate argued that Mr. Katz should not be able to claim the benefit of a class action “in which he never intended to participate” and that the insured’s reliance upon LSA-C.C. art. 596 was “misplaced because the article makes no reference to limitations periods imposed as a matter of contract.” The court concluded, without analysis, that “the filing of the class action did not alter the contractual prescriptive period that this court has heretofore held to be valid.” Id., at 447. The rationale behind this ruling was stated in Judge Murray’s concurrence, in which she wrote “a plaintiff who files an independent action before a determination on class certification has been made cannot benefit from the tolling of prescription applicable to putative class members.” Judge Murray maintained that when Mr. Katz filed his suit before the determination on the class certification, he “effectively opted out of the class action.” Id.
In Lila, supra, the court held that Ms. Lila’s claim as a result of Hurricane Katrina, which was filed on October 8, 2007, had prescribed on it face as it was filed more than two years from the date of loss, as provided by the insurance policy and after both statutory extensions of time to file claims had expired. Thus, the court correctly held that the unconditional payment of a first party property claim did not constitute acknowledgment sufficient to interrupt prescription. Unlike the present case, there is no mention of a pending class action lawsuit by which Lila was a putative member, which was timely filed and may have suspended prescription.
In Woman’s Hospital Foundation of Baton Rouge v. Billie Bolton, 05-2357 (La. App. 1 Cir. 12/28/06), 951 So.2d 1110, the court determined that when the patient, who was a putative member of the class action suit brought against the hospital, was ^dismissed from the class, the suspended prescriptive period began to run on her claim within thirty days of receiving notice of the dismissal pursuant to LSA-C.C.P. art. 596(A)(3). Upon receiving notice of the judgment of dismissal on July 24, 2001, Ms. Bolton failed to file suit until June 9, 2003. For this reason, the court correctly held that her suit was prescribed.
In Pitts, supra, Ms. Pitts’ property was destroyed by Hurricane Katrina, and she filed suit claiming LCPIC’s payments were “grossly inadequate.” Prior to filing her petition for damages, she asserted her interest as a putative member of the class action suits timely filed on August 25, 2006, i.e., the Buxton and Chalona class action suits. The following events occurred in the above-mentioned class action lawsuits: on August 9, 2007, the trial court denied Buxton class certification due to a lack of demonstrated commonality; on January 25, 2008, the court restricted the Chalona class to exclude those whose *731 claims were “insufficiently paid;” and on April 24, 2008, notice was sent to those who were excluded from the Chalona class. Ms. Pitts was one of those insureds who was excluded from that class. Ms Pitts did not wait to receive notice of her exclusion before filing suit. Instead, she filed her Petition for Damages on February 20, 2008, which was well before the prescriptive period began to run again, according to LSA-C.C.P. art. 596. Ms. Pitts did not submit a form opting out of the respective classes and therefore, her claims were initially included in the Chalo-na class action. The court of appeal noted that it certified the Chalona class, excluded claims of inadequate payment pursuant to LSA-C.C.P. art. 596, and provided notice 'to those excluded putative class members, such as Ms. Pitts. This notice triggered the termination of the suspended prescriptive period. Article 596(A)(2) maintains that any person excluded from the class has thirty (30) days from the mailing of the notice on April 24, 2008 to file suit. Since, Ms. Pitts timely filed her individual petition on February 20, 2008, the court of appeal found that Ms. Pitts’ 114claims had not prescribed. This Court denied the writ of certiorari. Pitts, supra.
In analyzing whether the Plaintiffs in this case timely filed their claims, we must consider the two class actions, Buxton and Chalona, which were timely filed on August 25, 2006, and whether the Plaintiffs are putative members of either class. The Buxton case sought a class definition as follows:
All present or past insureds of LOUISIANA CITIZENS FAIR PLAN who filed a claim for coverage benefits pursuant to their policy of insurance with LOUISIANA CITIZENS FAIR PLAN after August 29, 2005, and who have yet to have a proper loss adjustment of their property damage, and/or who have not been timely paid for their property damages after providing satisfactory proof of loss, pursuant to the time constraints allowed by law.
In the present case, the Plaintiffs’ claims fall within the defined class.
On August 9, 2007, class certification was denied in Buxton, but there was no order entered requiring notice to the putative class. On January 25, 2008, the trial court restricted the Chalona class to exclude those “whose claims were insufficiently paid” and ordered on April 24, 2008, that notice be provided to all putative plaintiffs.[8] Once the Buxton class certification was denied, and the Chalona class was restricted to exclude plaintiffs whose claims were insufficiently paid, the Plaintiffs’ claims in this case were no longer represented in the class action.[9]
Pursuant to LSA-C.C.P. art. 596, the liberative prescription that was suspended with the filing of the class action petition, commenced to run again thirty (30) days 11Bafter publication of notice of the class restriction in Chalona, or on May 24, 2008. Once the prescriptive period began to run again, the Plaintiffs had only the time remaining under the applicable prescriptive period within which to file suit. LSA-C.C. *732 art. 3472. When the Chalona and Buxton petitions were filed, on August, 25, 2006, Acts 739 and 802 were already in effect. As a result, under the law in effect at the time suit was filed, the Plaintiffs had until September 1, 2007, to bring their claims. Since notice was provided to all Chalona putative members on April 24, 2008, then according to LSA-C.C.P. art. 596, the suspended period ended on May 24, 2008, and the prescription commenced to run anew. The Plaintiffs, who were putative members of the Chalona class action, had until May 31, 2009 to file suit. In this instance, Taranto and Coleman filed suit on June 27, 2008, and pursuant to LSA-C.C.P. art. 596, the suit was timely filed.
Given this timetable, LCPIC’s claim that applying LSA-C.C.P. art. 596 would expose it to an indefinite period of liability on hurricane claims is exaggerated. There is a definite cut-off point to exposure. That point occurs after the prescriptive period pursuant to LSA-C.C.P. art. 596 begins to run anew and the Plaintiffs’ remaining time under the applicable prescriptive period within which to file suit has expired.
We disagree with LCPIC’s argument that the one year period in the insurance policy is a “contractual limitations” period and not a liberative prescriptive period subject to the suspension principles of LSA-C.C.P. art. 596. This holding would prevent all insureds from filing class actions against their insureds for breach of the insurance contract, unless the class action can be filed and a class certified, all within the one year limitations period, which is very unlikely. This ruling would have a limiting effect on the pending class actions involving Hurricane Katrina claims. Arguably, only the claims of the named plaintiffs in those class actions would be preserved because only actions by those named plaintiffs would have been “started | ^within one year of the date of loss.” Any other parties who relied upon the filing of the class actions to preserve their claims, instead of filing separate claims, would be subject to exceptions of prescription.
In sum, LCPIC claims the time limitation is contractual, not prescriptive, in nature and, therefore, not subject to the rules of prescription, i.e., suspension or interruption. Their position is flawed, however, in that, although parties to an insurance contract may by legislative pronouncement, limit the prescriptive period to one year, they may not, as a matter of law, contractually “opt out” of prescription, abrogate the prescriptive periods established by law, or divest said time limitations of their prescriptive nature. Therefore, as a one-year prescriptive period prescribed by law, the time limitation set forth in the policy is subject to the procedural rules of suspension of prescription.
Under Louisiana Civil Code article 3457, “[tjhere is no prescription other than that established by legislation.” LSA-C.C. art. 3471 provides: “[a] juridical act purporting to exclude prescription, to specify a longer period than that established by law, or to make the requirements of prescription more onerous, is null.” This provision is directed to the protection of interests vital to public order, i.e., the extinction of the charge against the debtor as a result of the creditor’s inactivity, the prevention of litigation brought long after memories have dimmed and evidence has been lost, and sets forth an imperative rule, which, by law, “private individuals cannot set aside ... by private agreement.” See E.L. Burns Co., Inc. v. Cashio, 302 So.2d 297, 300 (La.1974); see also, LSA-C.C. art. 7 (“Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such *733 laws is an absolute nullity.”). Therefore, by the very terms of this codal provision, parties may not contractually “opt out of’ prescription, or make its requirements more onerous.
117The decision in E.L. Bums is vitally important to an understanding of our principles of prescription as they stand today, because it is in this decision that a majority of this Court, lead by Justice Marcus, examines and strikes down a contractual limitation, or rather expansion of prescription, as violative of our codal provisions prohibiting the anticipatory renunciation of prescription. 302 So.2d at 301-302. In E.L. Bums, this Court analyzed whether the one-year prescriptive period of actions on the contractor’s bond under the public contracts law may be extended by a surety bond contract. LSA-R.S. 38:2247 (1950)[10] Here, E.L. Burns contracted with the general contractor to erect covered walkways at two East Baton Rouge Parish Schools at the agreed upon price of $4,767.00. However, the general contractor paid only $2,000, causing E.L. Burns to file suit against the general contractor and his surety. The surety bond provided that “[a]ny suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment falls due.” E.L. Burns filed suit more than a year after the recordation of acceptance by the school board, but within the two years from the date final payment was due. The Defendants filed an exception of prescription alleging a violation of LSA-R.S. 38:2247. The district court sustained the exception, and the court of appeal affirmed the district court’s ruling. This Court noted that there are two methods to determine whether a statute is an imperative or suppletive rule:
The first is by an examination of the wording of the text. Simply stated, this view holds that, if the statute in question states its command in unequivocal terms and without exception, the rule there expressed is imperative. However, if the statute is merely directory or contains a proviso such as ‘unless otherwise stipulated’ or ‘except as otherwise provided,’ it states a suppletive rule of law that may be superseded by conventional agreement. The second method of interpretation, suggested by those with reservations about the consistency of legislative drafting, evaluates the content of the statute to determine whether the | iSrule is directed to the protection of an interest vital to the public order. It has been suggested that proper technique requires consideration of both factors: the literal wording of the rule and the interest the rule was designed to protect.
Id. at 301 [Citations omitted.]
This Court held that the stipulation in the surety bond that suit may be brought within two years, “in contravention of the one-year prescription set forth in LSA-R.S. 38:2247, constitutes an anticipatory renunciation of prescription ... and cannot be given effect.” In a well-reasoned and well-supported dissent, Justice Tate, joined by Justice Calogero, advocated the freedom of contract and warned of the danger of “classifying any agreement limiting the time within which to sue under a contract as an agreement either to renounce prescription or somehow to limit it.” 302 So.2d at 303.
*734 In reviewing the stipulation in LCPIC’s policy of insurance, we find that this contractual limitation, which establishes a one-year liberative prescriptive period, merely adopts the Louisiana statutory prescriptive period to file claims. The parties are bound by the codal articles, and by a contractual agreement may not “opt out of’ prescription, divest the limitation of its prescriptive nature, or make its requirements more onerous. Consequently, as a prescriptive period, the prescribed time limitation herein is subject to all the laws governing liberative prescription, particularly the suspension of such by the filing of a class action under La. C.C.P. art. 596.
In determining whether the contractual limitation/prescriptive period is one subject to the general statutory rules of interruption, suspension, we disagree with LCPIC’s argument that in this case, the suit limitation period is determined by contract and not mandated by statute, and that the statutory rules for interruption and suspension of prescription are not applicable. In Tracy v. Queen City Fire Ins. Co., 132 La. 610, 614, 61 So. 687, 688 (1918), this Court noted that:
113Where the law directly or indirectly prescribes a limitation of actions, in logic and reason, such limitation should be controlled and governed by the general provisions of the law relating to the subject. In all statutes of limitations, there are exceptions in favor of a certain class of persons, such as minors and interdicts, and provisions relating to the interruption of the current prescription by acknowledgment, judicial demand, etc. Where, as in the case at bar, the law prescribes the limitation, and the parties cannot help themselves, there is no good reason in law or in equity for not applying the general rules of prescription laid down by the Civil Code, one of which provides that citation shall interrupt prescription, “whether the suit has been brought before a court of competent jurisdiction or not.” Article 3518.
In this case, the Louisiana Civil Code provides that an action on a contract is a personal action, subject to a liberative prescription of ten years. LSA-C.C. art. 3499. On the effective date of the policy at issue in this case, LSA-R.S. 22:629(A)(3) provided that no insurance contract issued for delivery in this state shall contain any stipulation: “[ljimiting right of action against the insurer to a period of less than twelve months next after the inception of the loss....” In accordance with this provision, the insurance policy contains the following stipulation: “No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.”
Based upon Tracy, we hold that the contractual stipulation in the LCPIC policy is actually one imposed by law, and not contract, and thus the laws with respect to interruption and suspension apply, including LSA-C.C.P. art. 596. This analysis equally applies to the one year extension of the limitations period LCPIC insists it “voluntarily” afforded to its policy holders. Such a conclusion is not inconsistent with former pronouncements of this Court. Indeed, in rejecting a contracts clause challenge to Acts 739 and 802, this Court specifically noted that the Louisiana insurance industry is pervasively regulated, and because the “minimum prescriptive period was already set by statute in the former R.S. 22:629 .... a change in the | ¡^prescriptive period was a legal possibility.” State v. All Property and Casualty Ins. Carriers, 06-2030 at p. 16, 937 So.2d at 325. This language supports our conclusion that the limitations period in the LCPIC policy is at least indirectly, if not directly, mandated by law. Therefore, it is *735 a statutory as opposed to purely contractual period.
Finally, we must resolve whether Acts 739 and 802, in extending the statutory and contractual prescriptive periods of insurance contracts in the wake of Hurricanes Katrina and Rita, are peremp-tive, and therefore not subject to interruption and suspension. LCPIC’s argument on this point is not persuasive. There are two distinctions between prescription and peremption: (1) the tolling of peremption extinguishes the right sought to be exercised, whereas prescription merely limits the time within which one may exercise the right; and (2) peremption is not subject to renunciation, suspension or interruption, while prescription may be renounced, suspended or interrupted. See LSA-C.C. arts. 3458 and 3461; Naghi v. Brener, 08-2527 (La.6/26/09), 17 So.3d 919. “Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period.” LSA-C.C. art. 3458. “Statutes of peremption destroy the cause of action.” Guillory v. Avoyelles Ry. Co., 104 La. 11, 28 So. 899, 901 (La.1900). In Guillory v. Avoyelles Ry. Co., 104 La. 11, 28 So. 899 (1900), this Court held that the three-month period allowed for the filing of a suit to contest the validity of a property tax election was peremptive in nature:
When a statute creates a right of action, and stipulates the delay within which that right is to be executed, the delay thus fixed is not, properly speaking, one of prescription, but it is one of peremption. Statutes of prescription simply bar the remedy. Statutes of peremption destroy the cause of action itself. That is to say, after the limit of time expires the cause of action no longer exists; it is lost.
Act 802 declares that it “establishes an additional, limited exception to the running of prescription and, as such, prevents the running of prescription for one | year on any claim seeking to recover for loss or damage to property against an insurer .... ” (emphasis added). There is no conflict between Article 596, providing for suspension of prescription upon the filing of a class action, and Act 802, requiring suits on Hurricane Katrina insurance claims “to be filed on or before August 30, 2007 or be forever barred,” so long as the class action suits were timely filed on or before August 30, 2007. The application of Article 596 to suspend the running of prescription against Katrina insurance claims timely asserted in class actions does not impair the obligations of any insurance contracts because the insurer has timely notice of the magnitude of all putative claims. Moreover, it provides that “any suit not instituted within that time and any claims relating thereto shall be forever barred unless a contract or the parties thereto provide for a later date.” (emphasis added). We reiterate that a peremptive period cannot be renounced, interrupted or suspended. Therefore, by definition, a time period that may be altered by contract or agreement of the parties cannot be a peremptive period.

CONCLUSION

For the foregoing reasons, we conclude that filing of a lawsuit designated as a class action pursuant to LSA-C.C.P. art. 591, suspends prescription for all members of the putative class until the district court has ruled on the motion to certify the class. When notice is given, pursuant to LSA-C.C.P. art. 596, the suspended prescription period begins to run again. Thus, we affirm the ruling of the court of appeal.
AFFIRMED.
*736 VICTORY, J., dissents and assigns reasons.
KNOLL, J., additionally concurs and assigns reasons.
WEIMER, J., concurs and assigns reasons.
GUIDRY, J., dissents and assigns reasons.
CLARK, J., concurs for reasons assigned by WEIMER, J.

. Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Cath *724 erine D. Kimball.

. 2006 Act No. 739 was enacted by the Legislature adding LSA-R.S. 22:658.3 (now LSA-R.S. 22:1894), which provides in pertinent part:
A. Notwithstanding any other provision of this Title to the contrary, any person or entity having a claim for damages pursuant to a homeowners’ insurance policy, ... and resulting from Hurricane Katrina shall have through September 1, 2007, within which to file a claim with their insurer for damages, unless a greater time period to file such claim is otherwise provided by law or by contract.
Act 739 was signed by the Governor on June 29, 2006, and became effective on that date.

. This Court refuted the insurance industry’s argument that the prescriptive period provided in an insurance policy cannot be altered by finding that “the prescriptive periods provided for in Acts 739 and 802 are constitutional.” State v. All Property and Casualty Ins. Carriers Authorized and Licensed to do Business in the State of Louisiana, 06-2030 (La.8/25/06), 937 So.2d 313, 330. Specifically, this Court noted Section 2 of Act 802, which provides in pertinent part that Louisiana Legislature established:
an additional, limited exception to the running of prescription and, as such, prevents the running of prescription for one year on any claim seeking to recover for loss or damage to property against an insurer on any homeowners’ insurance policy ... when such loss or damage was caused by or as a result of Hurricane Katrina or Hurricane Rita, or both. Accordingly, any such claim for damages caused by Hurricane Katrina shall be instituted on or before August 30, 2007, and any suit not instituted within that time and any claims relating thereto shall be forever barred unless a contract or the parties thereto provide for a later date....
Id. at 321. Act 802 was signed by the Governor on June 30, 2006, and became effective on that date.
In other words, at the time of Hurricane Katrina, Louisiana law prohibited insurers from including suit limitations periods shorter than 12 months, LSA-R.S. 22:629(A)(3)(2005), and prohibited parties from agreeing to a limitations period longer than the ten (10) year liberative prescriptive period. LSA-C.C. arts. 3471-3499. LSA-R.S. 22:658.3 (now renumbered LSA-R.S. 22:1894) extended the period to September 1, 2007 unless a greater time period was otherwise provided by law or by contract.

. The creation of prescriptive periods is exclusively a legislative task, and the state is afforded broad discretion in determining the time within which a claim must be brought. Marc S. Firestone, Prescription-What You Don't Know Can Hurt You-Louisiana Adheres To A Three Year Limit On The Discovery Rule, 58 Tul. L.Rev. 1547, 1549 (June 1984).

. It is well settled that liberative prescription may be "expressly or tacitly renounced only *727 after it has accrued." LSA-C.C. Arts. 3449, 3450; Huckabee v. Sunshine Homes, 26,294 (La.App. 2 Cir. 12/7/94), 647 So.2d 409, 413.

. Comment "b" to LSA-C.C. art. 3463 provides:
According to Louisiana decisions, after being interrupted by the filing of suit in a competent court, prescription is suspended while the suit is pending. See Marshall v. Southern Farm Bureau Casualty Company, 204 So.2d 665 (La.App. 3 Cir. 1967); Hebert v. Coumoyer Oldsmobile-Cadillac-G.M.C., Inc., 405 So.2d 359 (La.App. 4 Cir. 1981). However, it is preferable to speak of a continuous interruption rather than a suspension. See Dainow, The Work of the Louisiana Appellate Courts for the 1967-68 Term, 29 La.L.Rev. 230 (1969).

. LSA-C.C. art. 1906 states that "A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished.”

. These facts are spelled out in Pitts, supra.

. The Chalona class was certified and defined as follows:
All present or past insureds of Louisiana LCPIC Property Insurance Corporation a/k/a LOUISIANA LCPIC FAIR PLAN, hereinafter referred to as “LCPIC” who, on or after August 29, 2005, provided notification of loss resulting from Hurricane Katrina and/or Rita to LCPIC, notwithstanding whether loss adjustment was initiated within thirty (30) days after notification of loss, whose claims were not followed by a written offer to settle within thirty (30) days after receipt of satisfactory proof of loss.

. This Court noted that "the action against the surety on the bond must, like all lien claims on the project, be brought within one year from the date of recordation of acceptance of the work by the governing authority.” E.L. Bums at 299; LSA-R.S. 38:2247 (1950).